**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **YVETTE M. TILLMAN HENLEY**<br><br>v.<br><br>**BRANDYWINE HOSPITAL, LLC and LISA MACMULLEN,** *individually* | **CIVIL ACTION**<br><br>**NO. 18-4520** |

<u>**MEMORANDUM RE: MOTION TO DISMISS**</u>

Baylson, J.                                                                                                   July 23, 2019

## I.    Introduction

In this case, Plaintiff, Yvette Tillman Henley, alleges that her employer, Defendant

Brandywine Hospital, LLC ("Brandywine"), and her direct supervisor, Defendant Lisa Macmullen

("Macmullen") (together, "Defendants"), unlawfully discriminated and retaliated against her on

the basis of her race, disability, and for taking medical leave, in violation of federal and state law.

Plaintiff's Amended Complaint (ECF 10, "Am. Compl.") advances nine Counts:

1. **Count I**: Discrimination, retaliation, and hostile work environment on the basis of race under 42 U.S.C. § 1981 against both Defendants;[1]

2. **Count II**: Discrimination and hostile work environment on the basis of race under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII"), against Brandywine;[2]

3. **Count III**: Retaliation on the basis of race under Title VII against Brandywine;

4. **Count IV**: Disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 <u>et seq.</u> ("ADA"), against Brandywine;

5. **Count V**: Retaliation under the ADA against Brandywine;

---

[1] The Amended Complaint includes an allegation of hostile work environment in the § 1981 discrimination and retaliation claim.  (<u>See</u> Am. Compl. ¶ 66.)

[2] The Amended Complaint only specifically alleges hostile work environment in violation of § 1981 in Count I.  As Defendants assert that Plaintiff also alleges hostile work environment on the basis of race under Title VII and the PHRA, the Court deems the Amended Complaint to allege hostile work environment under § 1981, Title VII, and the PHRA.  (<u>See</u> ECF 16, "Rep." at 2.)

6. **Count VI**: Retaliation and interference under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), against both Defendants;

7. **Count VII**: Discrimination and hostile work environment based on race under the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), against Brandywine;[3]

8. **Count VIII**: Retaliation based on race under the PHRA against both Defendants;[4]

9. **Count IX**: Aiding and abetting discrimination under the PHRA against both Defendants.

Presently before this Court is Defendants' Motion to Dismiss all Counts pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## II.    Factual Background

Taking Plaintiff's allegations as true, the factual background is as follows. Plaintiff is an African American female who resides in the Commonwealth of Pennsylvania. (Am. Compl. ¶ 7.) Brandywine, Plaintiff's employer, is a limited liability company existing under the laws of Pennsylvania that has its principal place of business in Coatesville, Pennsylvania. (Id. ¶¶ 8–9.) Since October 2011, Plaintiff has been employed full-time as a Registrar within the Emergency Room Registration Department at Brandywine. (Id. ¶ 14.) During the relevant time period,

---

[3] Count VII quotes § 955(a) of the PHRA, which prohibits discrimination on the basis of race, color, and disability, among other characteristics. (Am. Compl. ¶ 88.) While Plaintiff alleges that she "makes a claim against Defendants [sic] under all of the applicable provisions of PHRA § 955," Plaintiff only alleges that Defendant violated the PHRA "by discriminating against the Plaintiff because of her race." (Id. ¶¶ 89–90.) Rather than determine which "provisions of PHRA § 955" may be "applicable," the Court reasonably construes Count VII as a PHRA discrimination claim based on race.

[4] Count VIII does not specify the basis for retaliation. Rather, the Amended Complaint alleges that "Defendants engaged in an unlawful discriminatory practice by . . . retaliating[] and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer." (Am. Compl. ¶ 93.) As Count VII–the PHRA discrimination claim–is based on race, the Court may reasonably infer that Count VIII alleges retaliation based on race under the PHRA.

Macmullen was employed by Brandywine as Patient Access Supervisor and acted as Plaintiff's supervisor. (Id. ¶¶ 10–13.)[5]

## A. Plaintiff's Medical Conditions

Plaintiff suffers from diabetes and hypokalemia (low potassium). (Id. ¶ 18.) Plaintiff's conditions affect her ability to perform daily tasks, such as walking and running, as well as her stamina to engage in certain physical activities continuously over long periods of time, including sitting. (Id.) Diabetes and hypokalemia also cause frequent urination and fatigue. (Id.) Hypokalemia, specifically, may also cause elevated blood pressure. (Id.) However, neither of Plaintiff's conditions affects her ability to perform her job "fully and competently." (Id. ¶ 19.)

## B. Plaintiff's Request for "Short Breaks"

That said, Plaintiff "continuously informed her supervisors"[6] that she required "short breaks" to check her blood pressure and blood sugar levels two to three times during each eight-hour workday. (Id. ¶¶ 15, 17.) Plaintiff's "supervisors" would respond by accusing her of disappearing from work and taking unauthorized bathroom breaks. (Id. ¶ 16.) As a result, prior to November 2017, Plaintiff was not given any scheduled breaks to check her blood sugar (or blood pressure). (Id. ¶ 17.)

## C. February 2017–February 2018 FMLA Leave

In a letter dated March 7, 2017, FMLA Source, Brandywine's FMLA leave administrator, sent a letter to Plaintiff, copying Macmullen, confirming that Plaintiff was granted intermittent FMLA leave from February 12, 2017 to February 11, 2018. (ECF 12-3, "Mot." Ex. 1.)[7] The

---

[5] Plaintiff does not allege where Macmullen resides.

[6] Plaintiff does not allege whether the "supervisors" included Macmullen.

[7] Defendants attach the FMLA approval documentation as Exhibit 1 to the Motion to Dismiss. As Plaintiff does not dispute the document's authenticity and several of Plaintiff's claims are based on Plaintiff's approved intermittent FMLA leave, the Court may consider this document

"[e]stimated frequency of absence" approved was "[o]n an intermittent basis for up to 2 treatment(s) or appointment(s) per month lasting up to 2 hour(s) per treatment/appointment and for up to 1 episodic incapacitation(s) per month." (Id.)

### D. February 2017 Discipline

On February 15, 2017, during the period of her approved intermittent FMLA leave, Plaintiff complained in writing to Macmullen and "her direct supervisor" about "improper statements" that were written about Plaintiff in a patient's registration record as well as "accusations about her work ethic."[8] (Am. Compl. ¶ 21.) Nine days later, on February 24, 2017, Defendants issued Plaintiff an "Employee Counseling/Disciplinary Action Notice" about Plaintiff's tardiness ("February Written Warning"). (Id. ¶¶ 22, 25.) The February Written Warning stated:

> Since January 1, 2017, [Plaintiff] has been late for 29 of 40 days (a few may be applied to FMLA). Being a few minutes late on occasion can be acceptable, being consistently late is a habit. This can also create issues with the prior shift getting out on time. [Plaintiff] was previously coached by the Patient Access supervisor [Macmullen] regarding her tardiness on the weekends. . . . Immediate and sustained improvement on tardiness must occur. If improvement does not occur, this will result in further disciplinary action up to and including termination[.]

(Id. ¶ 23.) Plaintiff alleges that "[a]t all times prior" to the February Written Warning, Plaintiff requested and was granted intermittent FMLA leave due to her "medical condition." (Id. ¶ 24.) Also before the February Written Warning, Plaintiff "consistently and often requested clarification" of her intermittent FMLA leave. (Id. ¶ 30.) Other white employees of Brandywine,

---

without converting the instant Motion to Dismiss into a motion for summary judgment under Rule 12(d). See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[8] The Amended Complaint does not specify whether the "accusations" refer to the statements allegedly made by Plaintiff's "supervisors" in response to Plaintiff's request for "short breaks."

who were also supervised by Macmullen and worked in Plaintiff's department, were late but did not receive similar discipline. (Id. ¶ 27.)

### E. April 2017 Meeting

Two months later, in April 2017, Plaintiff met with Macmullen; Brandywine's Interim Human Resources Director, Lisa Goble; and Plaintiff's co-worker, Cheryl Lafond, to "clear the air" as to "issues . . ., including Plaintiff's use of intermittent FMLA time and/or time to take short breaks to check her blood sugar and blood pressure." (Id. ¶ 31.) During this meeting, Goble told Plaintiff to "not even think about reporting [her] time to FMLA [Source]," and that if Plaintiff did, Goble would contact FMLA Source and fight Plaintiff's request for FMLA leave directly. (Id. ¶ 32.) Goble also informed Plaintiff that "she kn[ew] all about medicine" and suggested that Plaintiff "maybe . . . should try to take [her] medicine in the morning or evening" rather than take short breaks. (Id. ¶ 33.)

As of the April 2017 meeting, Plaintiff had used approximately eight hours of intermittent FMLA leave. (Id. ¶ 34.) After the meeting, Plaintiff was afraid to use her "approved and necessary" intermittent FMLA leave in fear of being further disciplined or terminated. (Id. ¶ 35.)

### F. Co-workers' Conduct

Aside from Plaintiff's alleged issues with medical leave and short breaks, two of Plaintiff's co-workers, Heather Aubry and Lafond, a white woman, expressed to Plaintiff that they had problems registering and/or servicing African American Emergency Room patients. (Id. ¶ 36.)[9] Lafond and Aubry described African American patients as "ignorant," "rude," "disruptive," and "abrupt," as well as other "racially incentive names." (Id. ¶ 37.) According to Lafond and Aubry, African American patients were nice to Plaintiff because Plaintiff is also African American. (Id.

---

[9] The Amended Complaint does not allege when Aubry and Lafond made these comments.

¶ 40.) As a result, Lafond and Aubry have refused, and "often" continue to refuse, to handle the registration of African American patients. (Id. ¶ 39.) They "often" pass such patients off to Plaintiff because she is African American. (Id. ¶ 41.)

Plaintiff informed Macmullen of Lafond and Aubry's "racially incentive and discriminatory" behavior, but Macmullen allowed this conduct to continue "on a regular basis."[10] (Id. ¶ 43.) For example, Lafond and Aubry have continued to refer to African American patients in a racially insensitive manner, and they "continuously" accuse Plaintiff of speaking "too much" with her African American supervisor[11] because they are both African American. (Id. ¶¶ 45– 46.) Plaintiff has not experienced similar complaints about white employees speaking with white supervisors. (Id. ¶ 42.)

Further, in August 2018, Lafond told Plaintiff that white women were superior to and have more "class" than African American women. (Id. ¶ 48.) Lafond also stated that she "could sexually satisfy [Plaintiff's] husband and [another African American female employee's] husband." (Id. ¶ 51.) Lafond has also made comments about African Americans who live in Coatesville and has told Plaintiff that she "[does not] even consider [Plaintiff] to be black . . . because [she] live[s] out in the country, and [she] [does not] sound or seem black." (Id. ¶ 53.) As a result, Defendants have allegedly caused Plaintiff to "expand her job duties to de-escalate racially provoked incidents in the Emergency Room" and to ensure that African American patients are treated equally to white patients. (Id. ¶ 56.) Plaintiff alleges that Defendants have caused, and continue to cause, Plaintiff to suffer "loss of income, loss of salary, bonuses, benefits and other compensation." (Id. ¶ 60.)

---

[10] The Amended Complaint does not make any allegations about when Plaintiff informed Macmullen of these comments or how Macmullen permitted this behavior to continue.
[11] The Amended Complaint does not specify whether this supervisor is Macmullen.

## III.    Procedural History

On December 11, 2017, Plaintiff filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), the Pennsylvania Human Relations Commission, and the Philadelphia Commission on Human Relations.  (Id. ¶ 4.)  Following receipt of the Notice of Right to Sue from the EEOC on July 23, 2018, Plaintiff filed the original Complaint in this case on October 22, 2018.  (Id. ¶ 5; ECF 1.)  On April 5, 2019, Defendants filed a Motion to Dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) (ECF 7).  On April 26, 2019, Plaintiff filed an Amended Complaint, rendering the Motion to Dismiss the original Complaint moot (ECF 10, 11).

On May 10, 2019, Defendants filed a Motion to Dismiss the Amended Complaint (ECF 12).  Plaintiff filed a Response in opposition on May 31, 2019 (ECF 15, "Resp."), and Defendants submitted their Reply in support on June 7, 2019 (ECF 16).

## IV.    Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted.  Iqbal, 556 U.S. at 678, 684.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she will provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## V. Discussion

### A. Parties' Contentions

#### i. Defendants' Motion to Dismiss

Defendants advance several reasons why Plaintiff's claims should be dismissed.

First, Defendants argue that Plaintiff's claims of racial discrimination under § 1981 (Count I), Title VII (Count II), and the PHRA (Count VII) must be dismissed because Plaintiff has failed to allege that she suffered an adverse employment action. (Mot. at 8–14.) Defendants contend that even if Plaintiff had alleged an adverse employment action, Plaintiff has not alleged any adverse employment action occurred under circumstances giving rise to an inference of racial discrimination, as necessary to state racial discrimination claims. (Id. at 12–14.) As to Plaintiff's race-based hostile work environment claims (Counts I, II, and VII), Defendants aver that Plaintiff's co-workers' alleged racially insensitive comments do not amount to "severe or pervasive" harassment. (Id. at 21–23.)

Second, Defendants contend that Plaintiff's race-based retaliation claims under § 1981 (Count I), Title VII (Count III), and the PHRA (Count VIII) must be dismissed because Defendants' alleged interference with Plaintiff's FMLA leave does not constitute a materially

adverse employment action. (Id. at 15–16.) Alternatively, Defendants argue that Plaintiff has failed to allege any causal connection between protected conduct under these statutes and an adverse employment action. (Id. at 15–17.)

Third, Defendants argue that Plaintiff's disability discrimination and retaliation claims under the ADA (Counts IV and V) fail because Plaintiff neither required nor requested a reasonable accommodation, Plaintiff's requests for "short breaks" were not ADA-protected conduct, and Plaintiff cannot allege that she experienced a requisite adverse employment action. (Id. at 23–30.)

Fourth, Defendants seek dismissal of Plaintiff's FMLA interference claim (Count VI) on the grounds that Plaintiff cannot plausibly allege that she was denied any benefit to which she was entitled because Plaintiff was granted intermittent FMLA leave. (Id. at 33–41.) Defendants contend that Plaintiff's FMLA retaliation claim (Count VI) falls short because Plaintiff has failed to allege that she suffered an adverse employment action. (Id. at 41–42.)

Finally, Defendants argue that because Plaintiff's PHRA claims against Brandywine must be dismissed, it follows that Plaintiff's claim against Macmullen for aiding and abetting Brandywine's PHRA violations (Count IX) must also be dismissed. (Id. at 42.)[12]

### ii.     Plaintiff's Response

In the Response, Plaintiff contends that the race-based discrimination and retaliation claims (Counts I, II, III, VII, and VIII) should not be dismissed for failure to allege an adverse employment action. Plaintiff contends that the expansion of her job duties to de-escalate racially provoked incidents and to service patients passed off by Lafond and Aubry amounts to an adverse employment action. (Resp. at 5–6, 7–9.) As to Plaintiff's racial discrimination claims in particular

---

[12] The Court notes that the Amended Complaint alleges aiding and abetting against "Defendants," but both Defendants and Plaintiff construe this Count as a claim against only Macmullen. (See Am. Compl. ¶ 72; Mot. at 42; Resp. at 14–15.)

(Counts I, II, and VII), Plaintiff also contends that the Amended Complaint adequately alleges that similarly situated individuals outside of her protected class were treated more favorably, as white employees within Plaintiff's department were not issued warnings for tardiness similar to the February Written Warning. (Id. at 7.)

Plaintiff also seeks to refute Defendants' contention that Lafond and Aubry's comments do not amount to "severe or pervasive" harassment necessary to sustain the hostile work environment claims (Count I, II, and VII). (Id. at 9–11.) Plaintiff lists examples of the racially insensitive conduct alleged, which Plaintiff allegedly endured over a significant period of time. (Id. at 10.)[13]

Plaintiff then contends that the ADA discrimination and retaliation claims (Counts IV and V) withstand dismissal because Plaintiff requested reasonable accommodations of FMLA leave. (Id. at 12–13.) Plaintiff also argues that Brandywine's failure to engage in an interactive process after Plaintiff requested "short breaks" is an adverse employment action. (Id. at 13.)

With respect to Plaintiff's FMLA interference and retaliation claims (Count VI), Plaintiff opposes Defendants' argument that Plaintiff failed to put Defendants on notice of her need for FMLA leave to excuse tardiness. (Id. at 13.) According to Plaintiff, Defendants were on notice of Plaintiff's need for intermittent FMLA leave because they knew that Plaintiff was disabled. (Id. at 13–14.) That said, Plaintiff contends that the issue of notice is a factual issue that does not warrant dismissal at the pleading stage. (Id.)

---

[13] Plaintiff contends in the Response that she was subjected to a hostile work environment based on her race and disability. (Id. at 9.) However, as Defendants point out, the Amended Complaint only alleges hostile work environment on the basis of race. (See Mot. at 1 n.1.) To the extent that Plaintiff is advancing a disability-based hostile work environment claim in the Response, the Court dismisses that claim.

Lastly, Plaintiff argues that because the Amended Complaint plausibly alleges discrimination and retaliation under the PHRA, it follows that Plaintiff's claim of aiding and abetting PHRA violations (Count IX) must also survive. (Id. at 14–15.)

### iii. Defendants' Reply

In the Reply, Defendants contend that Plaintiff failed to address several dispositive arguments raised in the Motion to Dismiss and, therefore, the Motion should be granted as unopposed. (Rep. at 5.) Further, Defendants argue that Plaintiff's Response misleads the Court as to the hostile work environment claims because Plaintiff fails to allege that Defendants, as opposed to Plaintiff's co-workers, were responsible for any alleged harassment. (Id. at 6.)

### B. Analysis

### i. Hostile Work Environment Claims (Counts I, II, and VII)

Plaintiff alleges that Aubry and Lafond's racially insensitive comments created a hostile work environment in violation of § 1981 (Count I), Title VII (Count II), and the PHRA (Count VII). Hostile work environment claims under these statutes are subject to the same analysis. See Anderson v. Boeing Co., 694 F. App'x 84, 88–89 (3d Cir. 2017) (addressing the plaintiff's race- and national-original-based hostile work environment claims under Title VII, the PHRA, and § 1981 together). To state a hostile work environment claim, a plaintiff must adequately plead: "1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability [meaning the employer is responsible]." Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (alterations in original) (citation and internal quotation marks omitted).

In evaluating a hostile work environment claim, a court must consider the "totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Miller v. Thomas Jefferson Univ. Hosp., 565 F. App'x 88, 93 (3d Cir. 2014) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). The Third Circuit has indicated that alleged "[r]acist comments solely directed toward others and made outside of [the] [p]laintiff's presence" cannot, on their own, sustain a hostile work environment claim. Felder v. Penn Mfg. Indus., Inc., 182 F. Supp. 3d 203, 209 (E.D. Pa. 2016) (McHugh, J.) (citing Caver v. City of Trenton, 420 F.3d 243, 264 (3d Cir. 2005) (stating that a plaintiff cannot establish a hostile work environment claim if she "was neither on the receiving end nor the subject of any comments"))).

Here, Defendants' argument focuses on the second and fifth elements of the prima facie case: whether Lafond and Aubry's alleged comments and conduct amount to "severe or pervasive" discrimination for which Defendants are liable. (See Mot. at 21–23; Rep. at 5.) The Court addresses each argument in turn.

### a. "Severe or Pervasive" Discrimination

Defendants contend that the Amended Complaint fails to allege "severe or pervasive" discrimination because Aubry and Lafond's comments were sporadic and isolated. (Mot. at 21–22.) Without pleading the dates on which Aubry and Lafond made these comments, Defendants argue, Plaintiff cannot establish that these comments were made with the requisite frequency to state a hostile work environment claim. (See id. at 22.) Plaintiff, on the other hand, points to allegations demonstrating that Aubry and Lafond's comments and "harassing conduct" occurred "over a significant period of time," as required to withstand dismissal. (Resp. at 9–10.)

Though Defendants seek to challenge Plaintiff's claim for failure to plead both severity and pervasiveness, the crux of Defendants' argument pertains to pervasiveness. Defendants contend that "numerous courts in the Third Circuit" have dismissed hostile work environment claims for failing to meet the "severe or pervasive" test. (Mot. at 22.) However, the only Third Circuit decision that Defendants cite, Sherrod v. Philadelphia Gas Works, 57 F. App'x 68 (3d Cir. 2003), applied the "severe and pervasive" standard that has since been renounced by the Third Circuit. Compare id. at 76 ("[W]e must determine whether all of the alleged conduct was severe and pervasive enough to create a hostile work environment."), with Castleberry, 863 F.3d at 264 ("The correct standard is 'severe or pervasive.'"). Under the correct "severe or pervasive" standard, "'severity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable conduct will contaminate the workplace only if it is pervasive." Castleberry, 863 F.3d at 264 (quoting Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006)).

The question of whether alleged conduct is sufficiently "severe or pervasive" is "context-specific." Castleberry, 863 F.3d at 264 (holding that a supervisor's use of the "n-word" in front of the plaintiffs and their non-African American co-workers, particularly when accompanied by threats of termination, was sufficiently severe conduct to state a hostile work environment claim); id. at 266 (holding that the plaintiffs could demonstrate pervasiveness by alleging that, "on several occasions," their sign-in sheets contained racially discriminatory comments, and that they were required to do menial tasks while their white, less experienced colleagues performed more complex work); cf. Felder, 182 F. Supp. 3d at 211 (concluding that a co-worker bullying the plaintiff in the lunchroom, staring at the plaintiff in the bathroom, and two physical confrontations in the plaintiff's workspace did not constitute "severe or pervasive" discrimination).

Here, Plaintiff alleges that the following incidents contributed to her hostile work environment: (1) Aubry and Lafond "have refused and often continue to refuse" to register "certain" African American patients and describe African American patients as "ignorant," "rude," "disruptive," and "abrupt"; (2) Aubry and Lafond "state" that the only reason that African American patients are nice to Plaintiff is because she is African American; (3) Aubry and Lafond "will often" pass off the registration of African American patients to Plaintiff; (4) Aubry and Lafond "continuously" accuse Plaintiff of speaking too often with her African American, female supervisor because they are both African American; (5) Lafond told Plaintiff that "white women were better than black women, and that white women have more 'class' than black women"; (6) Lafond told Plaintiff that white women were more sexually desired by African American men and stated that she "could sexually satisfy [Plaintiff's] husband and [another African American female employee's] husband"; (7) Lafond made "racially insensitive comments" about African Americans who live in Coatesville; and (8) the February Written Warning. (See Am. Compl. ¶¶ 37, 39, 41, 46, 48, 50–53, 57.)

Under the totality of the circumstances, Plaintiff has adequately alleged severe or pervasive conduct that could create a hostile work environment. Plaintiff has alleged that she was both in the presence of and was the subject of derogatory comments made about her race. Defendants' argument that Plaintiff cannot establish pervasiveness without the dates of these comments is unavailing. As the Third Circuit explained in Castleberry, "[w]hether these allegations are true and whether they amount to 'pervasiveness' are questions to be answered after discovery." Castleberry, 863 F.3d at 266. Similar to the defendants in Castleberry, here, "what Defendants . . . ignore is that in every case they cite the claim was resolved at summary judgment." Id. The frequency with which Aubry and Lafond made these comments is a matter to be resolved after

discovery.  See id. (noting that the number of times that racial remarks were scribbled on the plaintiffs' sign-in sheets was an issue to address after discovery).  Accordingly, the Court turns to the fifth element of a hostile work environment claim: respondeat superior liability.

### b. Respondeat Superior Liability

Defendants contend that Plaintiff has failed to establish respondeat superior liability because Plaintiff has not alleged any facts showing that Plaintiff experienced mistreatment after she complained to Macmullen.  (Rep. at 4, 5.)  With respect to this element, "[t]he basis for an employer's liability for hostile environment [racial] harassment depends on whether the harasser is the victim's supervisor or merely a co-worker."  Shaw v. Temple Univ., 357 F. Supp. 3d 461, 477 (E.D. Pa. 2019) (Goldberg, J.) (quoting Miller v. Thomas Jefferson Univ. Hosp., 908 F. Supp. 2d 639, 653 (E.D. Pa. 2012) (Joyner, J.), aff'd, 565 F. App'x 88)).  "When a harasser is a co-worker," as is the case here, "employer liability attaches '. . . if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.'"  Miller, 908 F. Supp. 2d at 654 (quoting Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009)).  Remedial action is "appropriate" "if it is reasonably calculated to prevent further harassment."  Huston, 568 F.3d at 110 (citation and internal quotation marks omitted).

Here, Lafond and Aubry are Plaintiff's co-workers, not her supervisors.  Plaintiff has adequately alleged that Brandywine may be held liable for their conduct because Brandywine "knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  See Miller, 908 F. Supp. 2d at 654 (quoting Huston, 568 F.3d at 104).  The Amended Complaint alleges that Plaintiff informed Macmullen, Plaintiff's supervisor, of Aubry and Lafond's "racially insensitive and discriminatory" conduct, but that Macmullen "allowed" these offensive comments to continue.  (Am. Compl. ¶¶ 43–44.)  These allegations, viewed in the light most favorable to Plaintiff, support a hostile environment claim.  Cf. Miller, 908 F. Supp. 2d at

654 (dismissing a hostile environment claim where the plaintiff never made a complaint of racial harassment to a supervisor). Therefore, the Court will deny the Motion as to Plaintiff's hostile work environment claims.

### ii. Race Discrimination Claims (Counts I, II, and VII)

Plaintiff also alleges that Defendants discriminated against her on the basis of her race in violation of § 1981 (Count I), Title VII (Count II), and the PHRA (Count VII). For purposes of the instant Motion, the Court addresses these claims together. See Brown v. J. Kaz, Inc., 581 F.3d 175, 181–82 (3d Cir. 2009) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII."); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) ("[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws[.]"); Gutema v. Commc'ns Test Design, Inc., No. 18-04785, 2019 WL 1958512, at *2 (E.D. Pa. May 2, 2019) (Pappert, J.) (analyzing the plaintiff's claims of racial discrimination under Title VII, the PHRA, and § 1981 together when ruling on the defendant's motion to dismiss).

If a plaintiff lacks direct evidence of discrimination, as is the case here, discrimination claims under these statutes are analyzed pursuant to the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Castleberry, 863 F.3d at 263 ("[A] court reviews [Title VII and § 1981 claims] under the burden-shifting framework outlined in McDonnell Douglas . . . ."). Under the McDonnell Douglas framework, "a plaintiff must first establish the requisite elements of h[er] claim (called the *prima facie* elements)." Id. To establish a prima facie case of discrimination, a plaintiff must sufficiently plead:

> 1) . . . [S]he is a member of a protected class; 2) [s]he was qualified for the position [s]he held; 3) [s]he suffered an adverse employment action; and 4) that similarly situated individuals not in plaintiff's protected class were treated more favorably or that the adverse employment action occurred under circumstances that give rise to an inference of discrimination.

<u>Jenkins v. Polysciences, Inc.</u>, No. 16-6616, 2017 WL 1361689, at *2 (E.D. Pa. Mar. 29, 2017)

(Baylson, J.) (quoting <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 (3d. Cir. 2003)); <u>see</u> <u>also</u>

<u>Castleberry</u>, 863 F.3d at 266 (providing the elements of a disparate treatment claim under § 1981).

At the motion to dismiss stage, a plaintiff does not need to prove the elements of a prima facie case

"because 'it may be difficult' for a plaintiff to prove discrimination '[b]efore discovery has

unearthed relevant facts and evidence.'" <u>Castleberry</u>, 863 F.3d at 266 (quoting <u>Swierkiewicz v.</u>

<u>Sorema N.A.</u>, 534 U.S. 506, 512 (2002)). Rather, as relevant here, "a claim of employment

discrimination necessarily survives . . . so long as the requisite *prima facie* elements have been

established," including adverse employment action. <u>Castleberry</u>, 863 F.3d 266; <u>see also</u> <u>Jenkins</u>,

2017 WL 1361689, at *3 ("The plaintiff must plead sufficient facts to allow the factfinder to infer

that discrimination was the reason for the adverse employment action.").

Defendants challenge Plaintiff's failure to allege sufficient facts to establish the third and

fourth elements of the prima facie case, arguing that Plaintiff has failed to plausibly plead an

adverse employment action or that such an action occurred under circumstances giving rise to an

inference of race discrimination. (<u>See</u> Mot. at 11–14.) The Court addresses each element in turn.

### a. Adverse Employment Action

An adverse employment action is "an action by an employer that is 'serious and tangible

enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"

<u>Storey v. Burns Int'l Sec. Servs.</u>, 390 F.3d 760, 764 (3d Cir. 2004) (quoting <u>Cardenas v. Massey</u>,

269 F.3d 251, 263 (3d Cir. 2001)). For example, "[t]ermination, failure to promote,[ ] failure to

hire[,] . . . [and] actions that reduce opportunities for promotion or professional growth can

constitute adverse employment actions." <u>Walker v. Centocor Ortho Biotech, Inc.</u>, 558 F. App'x

216, 219 (3d Cir. 2014). In contrast, "lateral transfers and changes of title or reporting relationships

have generally been held not to constitute adverse employment actions." Id.; see, e.g., Burlington Indus., Inc. v. Ellerth, 524 U.S. 752, 761 (1998) (noting that a "bruised ego"; a demotion without a change in pay, benefits, duty, or prestige; and reassignment to a less convenient job were not adverse employment actions) (citations omitted). The Third Circuit has indicated that "adverse employment actions should . . . be considered in the aggregate." Magerr v. City of Phila., No. 15-4264, 2016 WL 1404156, at *6 (E.D. Pa. Apr. 11, 2016) (Padova, J.) (citing Shaner v. Synthes, 204 F.3d 494, 503 n.9 (3d Cir. 2000)). Accordingly, while the Court assesses each alleged adverse employment action on its own, "whether the [allegations of fact are] sufficient [is] based on the whole picture." Magerr, 2016 WL 1404156, at *6 (alterations in original) (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997)).

The Third Circuit has stated, in a non-precedential opinion not cited by either party, that "[a]lternatively, a plaintiff may prove an adverse employment action by proving that he or she was subjected to a hostile work environment." Greer v. Mondelez Global, Inc., 590 F. App'x 170, 173 (3d Cir. 2014). Based on this decision, because the Court has concluded that Plaintiff has alleged sufficient facts supporting race-based hostile work environment claims, the Court will conclude that Plaintiff should be allowed to proceed on the theory that allegations of a hostile work environment establish the existence of an adverse employment action.

### b. Inference of Discrimination

To properly plead the fourth element of a discrimination claim, the plaintiff may either: "(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between h[er] membership in a protected class and the adverse employment action." Jenkins, 2017 WL 1361689, at *2 (quoting Greene v. V.I. Water & Power Auth., 557 F. App'x 189, 195 (3d Cir.

2014)).   Although comparators need not be "identically situated," they "must nevertheless be similar in 'all relevant respects.'" Jenkins, 2017 WL 1361689, at *2 (quoting Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222–23 (3d Cir. 2009)).   Where a plaintiff alleges that fellow employees were similarly situated, as is the case here, "she must show that the 'employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'"   Donaldson v. SEPTA, No. 17-4475, 2019 WL 801965, at *9 (E.D. Pa. Feb. 21, 2019) (Baylson, J.) (quoting Opsatnik, 335 F. App'x at 223).

Here, Plaintiff alleges that her co-workers do not treat white Emergency Room patients in the same manner as African American patients, and that there were no similar complaints about white employees speaking too often with their white managers.  (Am. Compl. ¶¶ 27, 42.)  Plaintiff also alleges that Aubry and Lafond's comments and the fact that they have passed off African American patients to Plaintiff has created a "racially insensitive and hostile work environment." (See id. ¶¶ 41, 55–58.)  Further, to the extent that the February Written Warning contributed to the hostile work environment, Plaintiff alleges that white employees also under Macmullen's supervision and within Plaintiff's department were also late but did not receive similar warnings. (Id. ¶ 27.)  Plaintiff does not allege that the white employees were tardy to the same degree as Plaintiff, nor that these employees were "previously coached by [Macmullen] regarding [their] tardiness," as the February Written Warning reveals about Plaintiff.  (See id. ¶ 23.)  However, overall, Plaintiff's allegations raise a reasonable expectation that discovery will reveal conditions giving rise to an inference of discrimination.  See Castleberry, 863 F.3d at 266 (holding that the plaintiffs' allegations demonstrating a hostile work environment under § 1981 also amounted to

evidence of disparate treatment in violation of § 1981).  Defendants' Motion to Dismiss Plaintiff's race discrimination claims will be denied.

### iii.      Race-Based Retaliation Claims (Counts I, III, and VIII)

Plaintiff further alleges that Defendants retaliated against her for reporting racial discrimination under § 1981 (Count I), Title VII (Count III), and the PHRA (Count VIII). Plaintiff's retaliation claims are subject to the same analytical framework as Plaintiff's disparate treatment claims under these statutes.  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 415 (3d Cir. 1999) (analyzing retaliation claims under Title VII, § 1981, and the PHRA under the same framework).

To state a prima facie case of retaliation under this framework, "a plaintiff must show that (1) she was engaged in a protected activity; (2) her employer took adverse action against her; and (3) there is a causal connection between h[er] participation in the protected activity and the adverse employment action."  Diallo v. Commonwealth Support Servs., No. 18-1517, 2019 WL 95918, at *5 (E.D. Pa. Jan. 3, 2019) (Baylson, J.) (citing Moore v. City of Phila., 461 F.3d 331, 340–41 (3d Cir. 2006)).

Again, Defendants' argument turns on whether Plaintiff has adequately alleged that she experienced an adverse employment action, as required to establish the second and third elements. "[D]iscrimination and retaliation claims apply different definitions of 'adverse employment action.'"  Seldon v. Nat'l R.R. Passenger Corp., 452 F. Supp. 2d 604, 608 (E.D. Pa. 2006) (McLaughlin, J.).  To establish an adverse employment action in the retaliation context, a plaintiff must plausibly allege that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making a charge of discrimination.'"  Moore, 461 F.3d at 348 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

Whether an employment action is "materially adverse" "often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." Burlington, 548 U.S. at 69 (citation and internal quotation marks omitted); see, e.g., Allen v. Nutrisystem, Inc., No. 11-4107, 2013 WL 1776440, at *6 n.6 (E.D. Pa. Apr. 25, 2013) (Robreno, J.) (noting that written warnings that are issued inconsistently with an employer's disciplinary scheme or are part of a progressive disciplinary policy can constitute adverse employment actions).

Here, Plaintiff argues that the February Written Warning amounted to a materially adverse employment action that occurred nine days after Plaintiff engaged in a "protected activity" of complaining to Macmullen about "improper statements" in Plaintiff's registration record and accusations about her work ethic. (See Resp. at 8–9.) However, the Court concludes that Plaintiff has failed to allege facts establishing that Defendants took any action against Plaintiff that would tend to dissuade a reasonable employee from complaining to her supervisors about alleged racial discrimination. Plaintiff neither alleges that the February Written Warning was part of a progressive disciplinary policy, nor that issuing the warning was inconsistent with Brandywine's disciplinary scheme. Cf. Allen, 2013 WL 1776440, at *6 n.6. While the February Written Warning could conceivably form the basis for an adverse employment action because it stated that "further disciplinary action up to and including termination" could have resulted, Plaintiff does not allege that she was subject to "further disciplinary action." (See Am. Compl. ¶ 23.) In the absence of such allegations, Plaintiff has failed to make out claims for retaliation based on race. While Plaintiff has stated claims of race discrimination by plausibly alleging a hostile work environment, Plaintiff has not alleged any facts suggesting that Plaintiff was retaliated against for

reporting the hostile work environment. As a result, the Court need not address the remaining elements of the prima facie case, and Plaintiff's race-based retaliation claims will be dismissed.

### iv. Disability Discrimination (Count IV): Disparate Treatment and Failure to Accommodate

Plaintiff alleges disability discrimination under the ADA on two theories: disparate treatment and failure to accommodate. Defendants argue that Plaintiff cannot establish a prima facie of disability discrimination based on disparate treatment because Plaintiff has failed to allege an adverse employment action. (Mot. at 24–25.) As to Plaintiff's failure to accommodate claim, Defendants contend that Plaintiff has failed to allege facts showing that she requested or was denied a reasonable accommodation. (Id. at 25–30.) The Court addresses each theory in turn.

### a. Disparate Treatment

Disability discrimination claims under the ADA are subject to the same burden-shifting framework as race discrimination claims under § 1981, Title VII, and the PHRA. See Newman v. GHS Osteopathic, Inc. v. Parkview Hosp. Div., 60 F.3d 153, 156–57 (3d Cir. 1995) (stating that claims under Title VII and the ADA are subject to the same analytical framework); see also Pierce-Schmader v. Mount Airy Casino & Resort, No. 3:13-cv-1141, 2014 WL 8106125, at *13 (M.D. Pa. Nov. 20, 2014) ("[A] section 1981 claim for employment discrimination is reviewed with the same burden shifting framework as a Title VII or ADA claim[.]"). To establish a prima facie case of discrimination under the ADA, a plaintiff must plausibly allege: "(1) that [s]he is disabled within the meaning of the ADA, (2) that [s]he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [s]he was subjected to an adverse employment decision as a result of discrimination." Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010). The definition of "adverse employment action" under Title VII discrimination claims also applies to ADA claims. See Cunningham v. Nordisk, 615 F. App'x 97, 100 (3d Cir. 2015).

Here, Defendants contest whether Plaintiff has alleged sufficient facts to establish the third element: an adverse employment action as a result of discrimination based on her disability. (Mot. at 9–12.) Plaintiff makes no arguments in response.

Plaintiff's allegations are plainly insufficient to state a disparate treatment claim under the ADA. As noted above, Plaintiff does not claim that she was subjected to a hostile work environment on the basis of her disability. Plaintiff appears to allege that the improper statements written about Plaintiff in a patient's registration record, accusations about her work ethic, and the February Written Warning were adverse employment decisions that resulted from disability discrimination. (Am. Compl. ¶¶ 21, 24, 28.)

The Amended Complaint is devoid of any allegations concerning how these actions materially altered the "terms or conditions" of Plaintiff's employment, as required to state a disparate treatment claim. See Deans v. Kennedy House, Inc., 998 F. Supp. 2d 393, 410–11 (E.D. Pa. 2014) (Robreno, J.) (concluding that disciplinary warnings regarding tardiness and attendance were not adverse employment actions because they did not alter the terms or conditions of the plaintiff's employment). While the February Written Warning provided that "if improvement [with Plaintiff's tardiness] d[id] not occur . . . further disciplinary action up to and including termination [would have resulted]," Plaintiff has not alleged that "further disciplinary action" did in fact result. (See Am. Compl. ¶¶ 23, 27; see also Deans, 998 F. Supp. 2d at 410–11 (noting that "[u]ntil [warnings] are acted upon by the employer, they remain simply warnings[,]" not adverse employment actions). Even if these events arose to the level of adverse employment actions, Plaintiff has not alleged any facts from which the Court may reasonably infer that these actions were caused by discriminatory animus on the basis of Plaintiff's disability. Plaintiff's ADA claim based on disparate treatment in Count IV will be dismissed.

### b. Failure to Accommodate

Next, Plaintiff alleges that Brandywine is liable for failure to accommodate or engage in an interactive process under the ADA. In particular, Plaintiff alleges that Brandywine's failure to reasonably accommodate her need for "short breaks" and/or bathroom breaks to check her blood sugar and blood pressure amounted to disability discrimination. (See Am. Compl. ¶¶ 19–20.)

The ADA provides a remedy when an employer fails to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee," unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). Under the ADA, "[d]iscrimination . . . encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failure to make reasonable accommodations for a plaintiff's disabilities." Ruggiero v. Mount Nittany Med. Ctr., 736 F. App'x 35, 39 (3d Cir. 2018) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).

"Reasonable accommodations" are defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). To determine the appropriate "reasonable accommodations" for an employee's disability, "it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]" after an employee puts the employer on notice of a disability and request for accommodation. Taylor, 184 F.3d at 311 (citation and internal quotation marks omitted); Ruggiero, 736 F. App'x at 39.

In light of these rules, to prevail on a failure to accommodate claim, a plaintiff must plausibly allege: "(1) [s]he was disabled and h[er] employer knew it; (2) [s]he requested an accommodation or assistance; (3) h[er] employer did not make a good faith effort to assist; and (4)

24

[s]he could have been reasonably accommodated." Capps v. Modelez Global, LLC, 847 F.3d 144, 157 (3d Cir. 2017) (citation and internal quotation marks omitted).

In this case, Defendants seek dismissal of Plaintiff's failure to accommodate claim based on the second element, contending that Plaintiff has failed to allege that she required or requested a reasonable accommodation. (Mot. at 23.) Plaintiff, on the other hand, argues that she requested a reasonable accommodation in the form of FMLA leave. (Resp. at 12–13.) Instead of engaging in an interactive process, Plaintiff argues, Defendants "constantly questioned whether her responses were legitimate or excuses for being late." (Id. at 13.)

Plaintiff is correct that, "under certain circumstances, a request for intermittent FMLA leave may . . . constitute a request for a reasonable accommodation under the ADA." Capps, 847 F.3d at 146. Even assuming that such circumstances are present here, the Amended Complaint does not allege that Brandywine failed to make a good faith effort to accommodate Plaintiff's request for intermittent FMLA leave. The Amended Complaint alleges that Plaintiff "continuously informed her supervisors" that she needed "short breaks" to check her blood sugar and blood pressure due to her diabetes and hypokalemia. (Am. Compl. ¶¶ 15, 31.) Plaintiff alleges that her supervisors responded by "accus[ing] her of disappearing from work and taking unauthorized bathroom breaks[,]" and that "[p]rior to November 2017, Plaintiff was not given any scheduled breaks . . . to check her blood sugar or blood pressure." (Id. ¶¶ 16–17.) However, Plaintiff also alleges that Brandywine granted Plaintiff intermittent FMLA leave "due to her medical condition." (Id. ¶ 24; see also Mot. Ex. 1.) As Plaintiff alleges that she received FMLA leave that she requested, Plaintiff's failure to accommodate claim cannot withstand dismissal. See Capps, 847 F.3d at 157. Therefore, Count IV will be dismissed.

### v.     Disability-Based Retaliation (Count V)

Plaintiff also alleges retaliation on the basis of her disability, arguing that Brandywine issued the February Written Warning because she requested FMLA leave in the form of "short breaks" and/or bathroom breaks.  As with Plaintiff's race-based retaliation claims, Defendants contend that Plaintiff's disability-based retaliation claim must be dismissed for failure to allege an adverse employment action.  (Mot. at 24–31.)  Defendants further contend that Plaintiff cannot state an ADA retaliation claim because Plaintiff has failed to allege that she engaged in an ADA-protected activity.  (Id. at 31–32.)

As discussed above, Plaintiff has failed to plausibly allege that she suffered an adverse employment action to sustain race-based retaliation claims under § 1981, Title VII, and the PHRA.  For the same reasons, Plaintiff's ADA retaliation claim must be dismissed.  See Katchur v. Thomas Jefferson Univ., 354 F. Supp. 3d 655, 670  n.11 (E.D. Pa. 2019) (Baylson, J.) (noting that the same framework governs retaliation claims under the ADA and § 1981).  As a result, the Court does not address Defendants' alternative arguments, and Count V will be dismissed.

### vi.     FMLA Interference and Retaliation Claims (Count VI)

Next, Plaintiff alleges that Defendants violated the FMLA by interfering with Plaintiff's exercise of her right to intermittent FMLA leave and by retaliating against Plaintiff when she exercised that right.  The Court addresses Plaintiff's interference and retaliation claims separately.

### a.  Interference

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under" the FMLA.  29 U.S.C. § 2615(a)(1).  "'Interfering with' the exercise of an employee's rights would include . . . not only refusing to authorize FMLA leave, but [also] discouraging an employee from using such leave."  Conoshenti

v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 142 (3d Cir. 2004) (quoting 29 C.F.R. § 825.220(b)). An interference claim may also arise from an employer's "fail[ure] to advise an employee of . . . her FMLA rights." Jacobs v. York Union Rescue Mission, Inc., No. 1:12-CV-0288, 2013 WL 433327, at *4 (M.D. Pa. Feb. 5, 2013).

> To state an FMLA interference claim, a plaintiff must plausibly allege:
>
> (1) . . . [S]he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of . . . her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which . . . she was entitled under the FMLA.

Ross v. Gilhuly, 755 F.3d 185, 191–92 (3d Cir. 2014). Regardless of the basis for an interference claim, the Supreme Court has stated that "the FMLA provides no relief unless the employee has been prejudiced by the violation." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). "In this Circuit, a plaintiff establishes prejudice by showing that an employer's failure to comply with the [FMLA] and regulations 'rendered [her] unable to exercise [an FMLA] right in a meaningful way, thereby causing injury.'" Innella v. Lenape Valley Found., 152 F. Supp. 3d 445, 462 (E.D. Pa. 2015) (Baylson, J.) (alterations in original) (quoting Conoshenti, 364 F.3d at 143).

Defendants challenge the fourth and fifth elements, contending that Plaintiff did not give notice to Defendants of her intention to use FMLA leave to be tardy, and that Plaintiff cannot allege that she was denied FMLA benefits to which she was entitled because her approved FMLA leave did not cover tardiness. (Mot. at 33–40.) Defendants also aver that Plaintiff has failed to allege that she was prejudiced by Defendants' interference. (Id. at 40–41.)

### i. Notice of Intention to Take FMLA Leave

As to the fourth element, the Court concludes Plaintiff has adequately alleged that she provided legally sufficient notice to entitle her to benefits under the FMLA. "To invoke rights

under the FMLA, employees must provide adequate notice to their employer about their need to take leave." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 303 (3d Cir. 2012). This requirement is "not onerous." Id. (quoting Burnett v. LFW Inc., 472 F.3d 471, 478 (7th Cir. 2006)); see also Lichtenstein, 691 F.3d at 303 ("The regulations already make it very easy for [an employee] to give notice of her intent to take leave." (alteration in original) (quoting Rask v. Fresenius Med. Care N. Am., 509 F.3d 466, 575 (8th Cir. 2007))). Accordingly, "[a]n employee who does not cite to the FMLA or provide the exact dates or duration of the leave requested nonetheless may have provided h[er] employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007). The "critical test" is "how the information conveyed to the employer is reasonably interpreted." Lichtenstein, 691 F.3d at 303 (quoting Sarnowski, 510 F.3d at 402).

Defendants are correct that the Amended Complaint does not allege that Plaintiff notified Defendants of her intent to use FMLA leave to excuse her tardiness. However, the Amended Complaint plausibly alleges that Plaintiff provided Defendants with "reasonably adequate information under the circumstances" for Defendants "to understand that [Plaintiff] s[ought] leave under the FMLA" for her medical conditions. See Sarnowski, 510 F.3d at 402. Specifically, Plaintiff alleges that she "properly requested and was granted FMLA time due to her medical condition." (Am. Compl. ¶ 24.) Defendants have not cited, nor is this Court aware of, any precedential judicial decisions suggesting that an employee's FMLA interference claim must be dismissed for failure to provide notice where an employer granted the employee FMLA leave. Therefore, Plaintiff has alleged sufficient facts demonstrating that she satisfied the notice requirements of the FMLA.

### ii. Interference Resulting in Prejudice

Plaintiff alleges that Defendants interfered with her rights under the FMLA in three ways. First, by issuing the February Written Warning to "discourage [Plaintiff] from using her intermittent FMLA time by falsely characterizing such time as tardiness." (Id. ¶ 29.) Second, by failing to provide Plaintiff with "clarification of her available intermittent FMLA time," which Plaintiff requested "consistently and often," before issuing the February Written Warning. (Id. ¶ 30.) Third, Plaintiff alleges that during the April 2017 meeting to "clear the air" with "issues, . . . including Plaintiff's use of intermittent FMLA time and/or time to take short breaks," Goble told Plaintiff to "not even think about reporting [her time] to FMLA [Source]," and that if Plaintiff did report her time to FMLA Source, Goble would fight the requested time. (Id. ¶ 32.) After the meeting, Plaintiff alleges that she "was afraid to use her approved and necessary intermittent FMLA time in fear of being further disciplined or terminated." (Id. ¶ 35.)

Defendants argue that these allegations do not support an FMLA interference claim. Specifically, Defendants contend that Plaintiff cannot allege that she was denied benefits to which she was entitled because Plaintiff's approved intermittent FMLA leave did not cover tardiness or "short breaks." (Mot. at 38–39.) As Plaintiff's "short breaks" did not fall within the parameters of her approved FMLA leave, Defendants argue, Goble's alleged comments did not prejudice Plaintiff's utilization of approved FMLA leave. (Id. at 40–41; id. Ex. 1.) The Court is not so persuaded.

The Amended Complaint plausibly alleges that Defendants interfered with the exercise of Plaintiff's FMLA rights. Even if Plaintiff's approved leave did not specifically cover tardiness or "short breaks," Plaintiff has plausibly alleged that Goble discouraged her from taking FMLA leave by telling Plaintiff to "not even think about reporting [her time]" to FMLA Source. (See Am.

Compl. ¶ 32); see also Jacobs, 2013 WL 433327, at *5 (concluding that an allegation that the defendant's management discouraged the plaintiff from taking time off for medical reasons could support an FMLA interference claim). Plaintiff's allegation that Defendants failed to advise her of her rights to use FMLA leave for "short breaks" or to excuse tardiness also constitutes a valid basis for an FMLA interference claim at the pleading stage. (See id. ¶ 30.) Finally, Plaintiff has sufficiently alleged that she suffered prejudice, as Plaintiff alleges that she was afraid to use FMLA time after Goble discouraged her from "reporting [her time]." (See id. ¶¶ 32, 35.) Therefore, Defendants' Motion to Dismiss Plaintiff's FMLA interference claim will be denied.

### b. Retaliation

Plaintiff also alleges that Defendants violated the FMLA by issuing the February Written Warning after Plaintiff requested intermittent FMLA leave. The FMLA makes it unlawful for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). To prevail on an FMLA retaliation claim, a plaintiff must show that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein, 691 F.3d at 301–02.

Defendants argue that Plaintiff has failed to allege an adverse employment action to support an FMLA retaliation claim, and Plaintiff offers no arguments in response. (See Mot. at 41–42.) For the reasons set forth above regarding Plaintiff's retaliation claims under § 1981, Title VII, the PHRA, and the ADA, Plaintiff has failed to establish an adverse employment action to sustain an FMLA retaliation claim. See Allen, 2013 WL 1776440, at *6 n.6 ("The Third Circuit has recognized [the materially adverse] standard as applicable to adverse employment actions in §

1981 and FMLA retaliation cases.").  Plaintiff's FMLA retaliation claim in Count VI will be dismissed.

### ii.        PHRA Aiding and Abetting Claim (Count IX)

Finally, Plaintiff alleges that Macmullen is liable for aiding and abetting Brandywine's PHRA violations.  Section 955(e) of the PHRA makes it unlawful for "any person, employer, . . . or employee[] to aid, abet, incite, compel or coerce the doing" of any unlawful discriminatory practice prohibited by the PHRA, including § 955(a).  43 P.S. § 955(e).  Plaintiff may maintain an aiding and abetting claim based on Brandywine's alleged creation of a hostile work environment in violation of the PHRA, which is the basis of Plaintiff's PHRA discrimination and hostile work environment claims.  Cf. Kaniuka v. Good Shepherd Home, No. 05-CV-02917, 2006 WL 2380387, at *10 (E.D. Pa. Aug. 15, 2006) (Stengel, J.) ("Individual defendants cannot violate PHRA section 955(e) when there is no corresponding section 955(a) violation by an employer to aid and abet.").

"When a supervisory employee has knowledge of conduct which creates a hostile work environment, inaction by such an employee or failing to take prompt remedial action to prevent harassment rises to the level of individual aiding and abetting under [ ] § 955(e) of the PHRA." Hewitt v. BS Transp. of Ill., LLC, 355 F. Supp. 3d 227, 238 (E.D. Pa. 2019) (DuBois, J.) (citation and internal quotation marks omitted).  A "supervisory employee" may be liable under § 955(e) "for h[er] own direct acts of discrimination or for h[er] failure to take action to prevent further discrimination by an employee under supervision."  Id. (citation and internal quotation marks omitted); see, e.g., Dici v. Commonwealth of Pa., 91 F.3d 542, 553 (3d Cir. 1996) (holding that an allegation that the plaintiff's supervisor knew or should have known that the plaintiff was being harassed by co-workers and repeatedly refused to take prompt action would, if proven true, constitute aiding and abetting).

Here, Plaintiff alleges that Macmullen, a "supervisory employee," knew about Aubry and Lafond's allegedly harassing conduct and permitted this behavior to continue. See Dici, 91 F.3d at 553 (holding that the plaintiff's supervisor was a proper defendant under § 955(e)). Specifically, the Amended Complaint alleges that "Plaintiff informed . . . Macmullen of [Aubry and Lafond's] racially incentive and discriminatory conduct and statements," and that Macmullen "allowed these offensive comments and remarks to continue to happen on a regular basis." (Am. Compl. ¶¶ 43–44.) These allegations permit the Court to draw the reasonable inference that Macmullen failed to take action to prevent further discrimination experienced by Plaintiff. Therefore, Defendants' Motion to Dismiss Plaintiff's aiding and abetting claim against Macmullen is denied.

## VI.    Conclusion

Defendants' Motion to Dismiss will be granted in part and denied in part. The Motion to Dismiss will be granted, with prejudice, as to Plaintiff's claims of retaliation under § 1981, Title VII, and the PHRA (Counts I, III, and VIII); discrimination and retaliation under the ADA (Counts IV and V); and retaliation under the FMLA (Count VI). Plaintiff has already had an opportunity to amend the Complaint and has failed to allege sufficient facts demonstrating an adverse employment action, with the exception of a race-based hostile work environment, as necessary to sustain claims of disability discrimination as well as retaliation based on race, disability, and medical leave. As further amendment would be futile, the Court dismisses these claims without granting leave to amend. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (stating that a district court may dismiss an action with prejudice when leave to amend would be inequitable or futile); see also In re Egalet Corp. Sec. Litig., 340 F. Supp. 3d 479, 514 (E.D. Pa. 2018) (Baylson, J.) (noting that a finding of futility is proper where "the complaint, as amended,

would fail to state a claim upon which relief could be granted") (citation and internal quotation marks omitted).

The Motion will be denied as to Plaintiff's claims of race discrimination and hostile work environment (Counts I, II, and VII); FMLA interference (Count VI); and aiding and abetting under the PHRA (Count IX).

An appropriate Order follows.

O:\CIVIL 18\18-4520 Henley v Brandywine Hosp\18cv4520 Memo re MTD.docx