IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YVETTE M. TILLMAN HENLEY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-4520 |
| | : | |
| BRANDYWINE HOSPITAL, LLC et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                          **March 30, 2021**

      Plaintiff Yvette Tillman Henley brings this employment discrimination action against Brandywine Hospital, LLC and Lisa MacMullen. Henley's remaining claims are (1) race discrimination and hostile work environment pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act (PHRA), and (2) interference pursuant to the Family and Medical Leave Act (FMLA). Henley also has a PHRA claim against McMullen personally for aiding and abetting the discrimination. Brandywine Hospital and MacMullen move for summary judgment arguing primarily that Brandywine Hospital has no successor liability for any of Henley's allegations because they arose before Brandywine Hospital owned and operated the hospital. Brandywine Hospital also argues it is entitled to summary judgment because the evidence fails to establish required elements of each of Henley's substantive claims. Because Brandywine Hospital does not bear successor liability for Henley's allegations that arose prior to its ownership and operation of the hospital, and because Henley also failed to establish the required elements of her claims, the Court will grant Defendants' motion and enter judgment in their favor.

**BACKGROUND**

      Yvette Henley is an African American woman who resides in the Commonwealth of Pennsylvania. Brandywine Hospital is a limited liability company formed under the laws of Pennsylvania whose principal place of business is the hospital in Coatesville, Pennsylvania.

Henley has worked at the hospital since 2011 as a Registrar in the Emergency Room Registration Department. Her responsibilities include welcoming new patients to the emergency room, registering them, and providing general customer service. Henley's work is shift-based, and she has worked the same 8-hour shift consistently since 2011. Defendant Lisa MacMullen also works at the hospital as a Patient Access Supervisor and oversees a team of employees that includes Henley.

When Henley began working at the hospital, it was owned and operated by another entity, Community Health Systems (CHS). On October 1, 2017, Brandywine Hospital took over the hospital as part of the Tower Health network of facilities. *See* Henley Dep. 30:12–20, ECF No. 29-5. Consequently, Henley became an employee of Brandywine Hospital on that same date. Henley was aware her allegations arose under Brandywine Hospital's predecessor's ownership. *See id.* at 18:9–19:11.

Henley testified that she worked in an environment marked with conflict, discord, and friction due to her race, disabilities, and attempts take FMLA-qualifying leave from work. Henley contends she was discriminated against, forced to work in a hostile work environment, and prevented from asserting her statutory employment rights; moreover, Henley alleges Brandywine Hospital, her coworkers, and her supervisors subjected her to disciplinary action that was a thinly veiled pretext for discrimination and harassment. She suffers from diabetes and hypokalemia, which is a low potassium disorder. These conditions affect her ability to perform daily tasks, such as walking and running, as well as her stamina to engage in certain physical activities over long periods of time, including sitting. She must take short breaks to check her blood pressure and blood sugar levels periodically throughout the day. These conditions occasionally require Henley to take leave from work for appointments and medical care.

The first incidents of hostility occurred in 2014, when Henley's supervisor, who is no longer an employee at the hospital, informed her she was on a "hit list" and her supervisor's goal was "to terminate [her]." *Id.* at 108:1–13. The only other individuals on this hit list were African American employees who were later terminated. *See id.* at 110:7–111:6. At the same time, Henley's coworkers began lodging complaints about her job performance. *See id.* at 113:10–114:10. Because she was on this hit list, Henley spent the next several years in fear of being ridiculed, disciplined, demoted, or terminated because of her race, her medical conditions, and baseless complaints about her performance. *See id.* at 112:15–115:4.

Since these issues arose in 2014, Henley alleges two coworkers fueled the hostility, Cheryl Lafond and Heather Aubry. *See id.* at 53:12–21. Lafond and Aubry were also Emergency Department Registrars who worked the same shift as Henley. As Director of Patient Access, Lisa MacMullen supervised Henley, Lafond, and Aubry. Henley had many disputes with Lafond during this time and Lafond sent complaints to MacMullen on multiple occasions. In one instance, Lafond complained about Henley's taking long unauthorized bathroom breaks to check her blood pressure and spending too much time in the office of Christal Nowlin, an African American woman and Henley's direct supervisor. *See id.* at 126:8–21.

Henley has thus been the subject of several disciplinary warnings over the years. *See id.* at 199:3. In May 2014, for example, Henley received an official written warning accusing her of "socializing and attending to personal matters at work," "excessive breaks and periods of leaving her station," and "negativity towards coworkers/general attitude." *Id.* at 192:2–12. As a result of this negative feedback, Henley stopped taking any breaks during her 8-hour shifts, ate lunch while working and standing up in uncomfortable situations, and was unable to reliably check her blood sugar at work for the next three years. *See id.* at 103:1–105:22.

3

Henley received more negative feedback in February 2017, when she received a written warning for tardiness. The warning stated,

> Since January 1, 2017, [Henley] has been late for 29 of 40 days (a few may be applied to FMLA). Being a few minutes late on occasion can be acceptable, being consistently late is a habit. This can also create issues with the prior shift getting out on time. [Henley] was previously coached by [the Patient Access Supervisor Lisa MacMullen] regarding her tardiness on the weekends . . . Immediate and sustained improvement on tardiness must occur. If improvement does not occur, this will result in further disciplinary action up to and including termination.

Mot. for Summ. J., Ex. 13, ECF No. 29-22. Christal Nowlin, Henley's supervisor, testified that she believed other white employees had tardiness issues but could not recall whether they received any kind of disciplinary notice. *See* Nowlin Dep. 51:7–52:20, ECF No. 29-16. Also during this time, Henley periodically requested, and was granted, intermittent FMLA leave due to her medical conditions. Henley believes she never abused her FMLA time and only took time off when she was feeling ill due to her medical conditions.

Soon after receiving the written warning in February 2017, Henley was called into a meeting with Lafond and Interim HR Director, Lisa Goble, to discuss the ongoing issues between MacMullen, Lafond, and Henley. The parties attempted to "clear the air" and also discussed Henley's ongoing need to take breaks during her shift to control her medical conditions. *See* Henley Dep. 199:22–201:6, ECF No. 29-7. Henley claims Goble also told her during the meeting, "don't even think about using [FMLA leave]," and if Henley did make such a request, Goble would "contact FMLA personally" to contest the requested time off. *Id.* at 201:8–17. Goble also gave Henley advice for managing her medical conditions in such a way that would interfere less with her work responsibilities, despite the fact that Goble is not a physician. *See id.* at 201:8–21.

Henley argues Goble's conduct constituted an interference with her rights under the FMLA to take qualifying leave from work. According to Henley, this negative feedback was also race-

4

motivated as evidenced by the fact that MacMullen bypassed Christal Nowlin—Henley's immediate supervisor—because Nowlin is also an African American woman.

In addition to her FMLA interference allegations, Henley also claims Brandywine Hospital and her coworkers—specifically Lafond and Aubry—created a racially insensitive atmosphere and discriminated against her because of her race. Henley claims Lafond and Aubry referred to her as "ghetto," "ignorant," "rude," "disruptive," and other terms with racist connotation or undertones. *See* Henley Decl. ¶¶ 39–40, ECF No. 32-3.[1] Henley also states Lafond and Aubry have on several

---

[1] Brandywine Hospital asks the Court to strike Henley's declaration because it is a "sham affidavit" filed for the purpose of avoiding summary judgment. *See* Defs.' Reply 1–5, ECF No. 35. "[A] party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) (citation omitted). This "sham affidavit doctrine" recognizes an affidavit "cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant." *Id.* at 253. However, courts are not required to disregard the entire affidavit in these cases. *See Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004). Courts may disregard the inconsistencies if the affiant offers "a satisfactory explanation for the conflict," such as that the subsequent affidavit explains or clarifies a witness's deposition testimony. *Sodexomagic, LLC v. Drexel Univ.*, 333 F. Supp. 3d 426, 442–43 (E.D. Pa. 2018) (citation omitted). The moving party must present "clear and extreme facts" to justify striking the declaration. *Id.* (citation omitted). To the extent any discrepancies exist between deposition testimony and declarations, a court is not required to disregard the affidavit "but instead may consider its weight in light of any apparent contradiction." *Id.* at 443. Gaps and minor discrepancies are credibility matters that are "properly reserved for cross-examination." *Id.* (quoting *Heasley v. Echostar Satellite LLC*, No. 08-261, 2009 U.S. Dist. LEXIS 45035, at *3 (W.D. Pa. May 22, 2009)).

Henley claims she filed the declaration to supplement and clarify her deposition testimony because Brandywine Hospital failed to ask targeted, specific questions during her deposition regarding her allegations and when they occurred. The Court finds this a satisfactory explanation and declines to strike the declaration in its entirety.

The only material inconsistency between Henley's deposition testimony and her declaration is the nature and scope of comments made by Heather Aubry. *See* Defs.' Reply 3–4, ECF No. 35. In the declaration, Henley states Aubry and Lafond both played roles in creating the hostile work environment and used the racially charged language cited above. *See* Henley Decl. ¶¶ 39–48. But Henley did not testify as to any comments made by Lafond, let alone the extremely offensive comments cited in her pleadings and declaration. *See* Henley Dep. Therefore, the Court

occasions refused to handle the registrations of certain African American patients and spoke to such patients in a condescending and degrading manner. Lafond and Aubry told her the only reason African American patients are nice to her is because she too is African American, and Lafond and Aubry would often pass off African American patients to Henley because they did not want to handle their registration. *See id.* at ¶¶ 41–47. Because Henley, Lafond, and Aubry shared the same shift, Henley had to defend herself and her African American patients from racial stereotypes and was frequently forced to deescalate racially charged situations between hospital employees and patients. *See id.* at ¶ 59.

The hostility continued into 2018 and 2019. For example, Lafond made sexually inappropriate comments about Henley's husband, their sexual relationship, and Lafond having sexual relations with Henley's husband in front of patients. *See* Henley Dep. at 126:1–22, ECF No. 29-6. Lafond also made disparaging remarks about African Americans in the local community saying, "I don't even consider you to be [B]lack Yvette because you live out in the country, and you don't sound or seem [B]lack." Henley Decl. at ¶ 56. Some of these comments were met with corrective action by supervisors, but for the most part, these instances occurred unchecked.

After completing the required EEOC procedures, Henley filed the Complaint on October 22, 2018, alleging discrimination, retaliation, a hostile work environment, and interference pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), and the Pennsylvania Human Resources Act (PHRA). Following Brandywine Hospital's motion to dismiss, the Court dismissed Henley's claims for race-based retaliation under § 1981, Title VII, and the PHRA (Counts I, III, and VIII),

---

will strike the declaration only to the extent it is inconsistent with the remainder of the evidence on record of Aubry's racist comments and contribution to Henley's hostile work environment.

discrimination and retaliation under the ADA (Counts IV and V), and retaliation under the FMLA (Count VI).[2] Henley's remaining claims are for race discrimination and a hostile work environment pursuant to § 1981, Title VII, and the PHRA (Counts I, II, VII), and FMLA interference (Count VI). Henley also has a claim against MacMullen for aiding and abetting race discrimination in violation of the PHRA (Count IX).

Brandywine Hospital and MacMullen filed the instant motion for summary judgment on March 30, 2020. *See* Mot. for Summ. J., ECF No. 29. They argue Brandywine Hospital is entitled to summary judgment on all claims because all of Henley's complained-of incidents occurred before Brandywine Hospital employed Henley and Brandywine Hospital bears no successor liability for those claims. They also argue Henley cannot meet her burden of production on her claims. Specifically, the record shows Henley did not experience any adverse employment action, which is a required element of her discrimination claims, any hostility Henley experienced was neither severe nor pervasive, which is a required element for her hostile work environment claims, and there was no interference with Henley's FMLA rights. MacMullen contends she is entitled to judgment on the PHRA aiding and abetting claim because it is derivative of Henley's other claims, which fail for the above-mentioned reasons. The Court held a telephonic hearing on the motion on February 18, 2021.

**DISCUSSION**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the

---

[2] The Court granted the motion to dismiss with respect to Counts III, IV, V, and VIII in their entirety and denied the motion with respect to Counts II, VII, and IX. The Court granted in part and denied in part with respect to Counts I and VI, leaving the causes of action listed above.

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id*. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

After the moving party has met its initial burden, the adverse party's response must "by citing to particular parts of materials in the record," set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A). "Speculation and conclusory allegations" are insufficient to satisfy the nonmoving party's duty. *Sawa v. RDG-GCS Joint Ventures III*, No. 15-6585, 2017 U.S. Dist. LEXIS 109357, at *22 (E.D. Pa. July 24, 2017). Summary judgment is appropriate if the nonmoving party fails to rebut—by making a factual showing—that "a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Id*. However, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. *See Anderson*, 477 U.S. at 255.

The Court will grant Brandywine Hospital's motion for summary judgment because Henley cannot establish successor liability for the claims against it.[3] In employment discrimination

---

[3] Henley argues this successor liability defense is waived pursuant to Federal Rule of Civil Procedure 8(c) because Brandywine Hospital did not raise it as an affirmative defense in the Answer. However, Rule 8(c) does not list successor liability as an affirmative defense, nor does either party cite any authority discussing whether lack of successor liability is an affirmative defense that must be raised in the answer to avoid waiver.

The Third Circuit, acknowledging that Rule 8(c) itself "provides little guidance for determining which defenses, other than those specifically set out, fall within its ambit," instructs district courts to focus on "what Rule 8(c) is intended to avoid." *In Re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008). That is, "the purpose of requiring the defendant to plead available affirmative defenses in [the] answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *Id*. (quoting *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)). The focus of the inquiry is

8

cases where there is a transfer of assets from a predecessor employer to a successor employer, courts must consider the following factors in determining whether the successor employer is liable for claims against the predecessor: (1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and (3) ability of the predecessor to provide an adequate relief directly. *See Brzozowski v. Corr. Phys. Servs., Inc.*, 360 F.3d 173, 178 (3d Cir. 2004) (quoting *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 401 (3d Cir. 1999) (citation omitted)). Successor liability "is based upon equitable principles with an emphasis on the second and third factors listed above." *Fredriksen v. Consol Energy, Inc.*, No. 18-379, 2019 U.S. Dist. LEXIS 81193, at *8 (W.D. Pa. May 14, 2019) (citing *Criswell v. Delta Airlines, Inc.*, 868 F.2d 1093, 1094 (9th Cir. 1989)). The "notice" factor depends on whether Brandywine Hospital had "notice of the specific discrimination claim in question" at the time it commenced operation of the hospital. *Fredriksen*, 2019 U.S. Dist. LEXIS 81193, at *10–11. As for the third factor, the focus is whether "the original company has any inability to provide adequate relief directly to [the plaintiff]." *Id.* at 11.

Henley has presented insufficient evidence to establish successor liability against Brandywine Hospital. It is undisputed that there was continuity in operations and workforce when

---

whether the failure to raise the defense deprived the plaintiff of an opportunity to rebut the defense and "alter [her] litigation strategy accordingly." *In re Sterten*, 546 F.3d at 285.

It is undisputed that Henley knew Brandywine Hospital became her employer on October 1, 2017. *See* Henley Dep. 18:2–13, ECF No. 29-5. It is also undisputed that almost every alleged instance of racial hostility and discrimination occurred prior to that date. Although Brandywine Hospital failed to plead lack of successor liability as an affirmative defense in its Answer, allowing Brandywine Hospital to proceed with this defense will not prejudice Henley because she knew of the hospital's change in ownership and chose to sue Brandywine Hospital and not its predecessor. Therefore, she has not been ambushed by Brandywine Hospital's use of the defense on summary judgment. In any event, successor liability is central component of every employment discrimination case. *See, e.g.*, *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 401 (3d Cir. 1999).

Brandywine Hospital took over the hospital on October 1, 2017. To establish the notice requirement, Henley relies on the transmission of one letter to show Brandywine Hospital's knowledge of her claim—the Notice of Charge of Discrimination sent by the EEOC to "Human Resources Manager Brandywine Hospital 111 N 6th St, Reading, PA 19601." Defs.' Resp. 7, ECF No. 32. Henley, however, did not file the EEOC Charge of Discrimination until December 18, 2017, more than two months after Brandywine Hospital took over the hospital. *See* Pl.'s EEOC Charge, ECF 29-26. Therefore, there is no evidence in the record that Brandywine Hospital had notice "of the specific discrimination claim in question" *at the time it commenced operation* of the hospital. And finally, there is no evidence that Brandywine Hospital's predecessor, CHS, is unable to provide adequate relief directly.

Because Henley has produced insufficient evidence to establish successor liability, Brandywine Hospital is entitled to summary judgment on all claims. Even if Henley could establish successor liability, however, Brandywine Hospital is nonetheless entitled to judgment because the evidence fails to establish a prima facie case for each of Henley's claims for race discrimination, hostile work environment, FMLA interference, and PHRA aiding and abetting. The Court addresses these substantive claims in turn.

Henley's race discrimination claims fail because she did not experience an adverse employment action. To establish discrimination under § 1981, Title VII, or the PHRA, a plaintiff must show (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) similarly situated individuals not in her protected class were treated more favorably or an adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017).

An adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Story v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (citations omitted). Under this standard, "an adverse employment action involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Reynolds v. Dep't of Army*, 439 F. App'x 150, 153 (3d Cir. 2011) (quoting *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Even tangible actions "such as lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions." *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 219 (3d Cir. 2014) (citing *Burlington*, 524 U.S. at 761 (1998)). Significantly, the "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate these statutes." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Finally, a written warning itself is insufficient. *See, e.g.*, *Newsome v. Admin Office of the Courts of the State of N.J.*, 51 F. App'x 76, 79 (3d Cir. 2002).

There is no evidence Henley was suspended without pay, passed up for promotion, or had any alteration of her duties or changes in the terms of her employment. Nor does Henley present any evidence showing anyone of another race who was similarly situated to her receiving more favorable treatment. Having no "traditional" alterations to the terms of her employment over the relevant period of time, Henley argues the existence and creation of her hostile work environment itself constitutes an adverse employment outcome. The Court denied Brandywine Hospital's motion to dismiss and allowed the claim to proceed on this theory based on the Third Circuit's nonprecedential decision in *Greer v. Mondelez, Global, Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014) ("Alternatively, a plaintiff may prove an adverse employment action by proving that he or she was

subjected to a hostile work environment."). Therefore, whether Henley has presented sufficient evidence to find an adverse employment action hinges on whether the evidence shows she was subjected to a hostile work environment.

Henley's hostile work environment claims fail because there is insufficient evidence to find any discrimination that she faced was severe or pervasive. Because the hostile work environment is the only adverse employment action Henley allegedly experienced, her discrimination claims also fail.

Brandywine Hospital is entitled to summary judgment on Henley's § 1981, Title VII, and PHRA hostile work environment claims because the evidence does not establish the discrimination was severe or pervasive, which is a required element of Henley's prima facie case. Because the allegedly hostile work environment is the only proffered adverse employment outcome Henley experienced, Brandywine Hospital is also entitled to judgment on Henley's discrimination claims.

Under § 1981, Title VII, and the PHRA, the hostile work environment analysis is the same. *See Anderson v. Boeing Co.*, 694 F. App'x 84, 88–89 (3d Cir. 2017) (addressing the plaintiff's hostile work environment claims based on race and national-origin under Title VII, the PHRA, and § 1981 together). A plaintiff must show "(1) [she] suffered intentional discrimination because of [her] [race]; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability [meaning the employer is responsible]." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

In evaluating a hostile work environment claim, a court must consider the "totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x 88, 93 (3d Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The Third Circuit has said "offhand comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 264 (3d Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Under the "severe or pervasive" standard, "'severity' and 'pervasiveness' are two alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable conduct will contaminate the workplace only if it is pervasive." *Castleberry*, 863 F.3d at 264 (quoting *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006)). The question of whether conduct is sufficiently "severe or pervasive" is "context-specific." *Castleberry*, 863 F.3d at 264 (holding that a supervisor's use of the "n-word" in front of the plaintiffs and their non-African American co-workers, particularly when accompanied by threats of termination, was sufficiently severe conduct to state a hostile work environment claim); *id.* at 266 (holding that the plaintiffs could demonstrate pervasiveness by alleging that, "on several occasions," their sign-in sheets contained racially discriminatory comments, and that they were required to do menial tasks while their white, less experienced colleagues performed more complex work); *cf. Felder v. Penn Mfg. Indus.*, 182 F. Supp. 3d 203, 211 (E.D. Pa. 2016) (concluding that a co-worker bullying the plaintiff in the lunchroom, staring at the plaintiff in the bathroom, and two physical confrontations in the plaintiff's workspace did not constitute "severe or pervasive" discrimination).

Racial comments that are "sporadic or part of casual conversations do not violate Title VII." *Tourtellotte v. Eli Lilly & Co.*, No. 09-774, 2013 U.S. Dist. LEXIS 54392, at *8 (E.D. Pa.

Apr. 15, 2013) (quoting *Al-Salem v. Bucks Cnty. Water & Sewer Auth.*, No. 97-6843, 1999 U.S. Dist. LEXIS 3609, at *15–16 (E.D. Pa. Mar. 25, 1999)), *aff'd*, 636 F App'x 831 (3d Cir. 2016). Instead, "for racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racist slurs, there must be a steady barrage of opprobrious racial comments." *Tourtellotte*, 2013 U.S. Dist. LEXIS 54392, at *8 (quoting *Al-Salem*, 1999 U.S. Dist. LEXIS 3609, at *15–16)).

The racially insensitive comments made by Henley's coworkers fall short of "a steady barrage of opprobrious racial comments." Henley testified during her deposition about comments made by Lafond; specifically, Lafond said "[B]lack patients are rude and abrupt," "white women were better than [B]lack women," "[B]lack men don't want [B]lack women," and that Black patients would talk to her because she was Black. *See* Henley Dep. 116:16–117:10, ECF No. 29-6. Henley has presented no evidence as to the frequency of these comments. Moreover, it appears the comments were made almost entirely by Lafond. In her deposition, Henley did not testify about any specific comments made by her other coworker, Heather Aubry. Therefore, even taking the evidence in the light most favorable to Henley, a reasonable jury could not find this sporadic racially insensitive commentary to be either severe or pervasive. *See, e.g.*, *Rose v. Woolworth Corp.*, 137 F. Supp. 2d 604, 607–11 (E.D. Pa. 2001) (granting summary judgment for defendant on a hostile work environment claim where plaintiff alleged a supervisor subjected plaintiff to "constant and unremitting negative comments and evaluations" based at least in part on plaintiff's race, referred to Black community as a "baby factory," stated Blacks are incapable of thinking analytically, and warned the plaintiff, who was Black, not to talk to white women).

When faced with significantly more severe or pervasive conduct than what occurred in this case, numerous courts in the Third Circuit have dismissed hostile work environment claims. *See*,

*e.g.*, *Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 75–77 (3d Cir. 2003) (holding that alleged incidents, including managers making comments that "the way [two African-American employees] were eating at their desks, it must be their culture," and that if such clerks did not do their work, "I'm going to sit at their desks with a whip," were not sufficiently severe and pervasive, even considering the comments in conjunction with other facially neutral, alleged mistreatment of the employee); *Woodard v. PHB Die Casting*, No. 04-141, 2005 U.S. Dist. LEXIS 26873, at *8–16 (W.D. Pa. Nov. 8, 2005) (granting summary judgment on race-based hostile work environment claim where plaintiff alleged that supervisors used overtly racist terms such as the "n-word" and "monkey" but admitted that very few racially tinged comments were actually directed towards plaintiff in his presence).

Because Lafond's comments were not severe or pervasive, Brandywine Hospital is entitled to summary judgment on Henley's race-based hostile work environment claims under § 1981, Title VII, and the PHRA. Additionally, Brandywine Hospital is entitled to summary judgment on the race discrimination claims because, without a hostile work environment, Henley cannot show an adverse employment outcome. *See Greer*, 590 F. App'x at 173–74 (affirming the district court's grant of summary judgment on plaintiff's discrimination claim because the discrimination was neither severe or pervasive enough to establish a hostile work environment and plaintiff had no adverse employment action).

Henley's FMLA claim also fails because there is no evidence that she ever requested FMLA time, informed her employer that the leave qualified under the Act, and was denied. Similarly, there is no evidence of her attempting to take FMLA time but declining to ask for fear of retribution.

The FMLA prohibits employers from interfering with an employee's rights under the Act to take leave and return from leave. *See* 29 U.S.C. § 2615(a). For an "interference" claim, it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA. *Id.* § 2615(a)(1); *see Hayduk v. City of Johnstown*, 386 F. App'x 55, 59 (3d Cir. 2010). To state an FMLA interference claim, a plaintiff must establish: (1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) she was denied benefits to which she was entitled under the FMLA. *See Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) (citation omitted); *see also Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007) (to establish an FMLA interference claim, a plaintiff must show that her employer "illegitimately prevented [her] from obtaining [FMLA] benefits" (citing *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005))).

In order to prevail on an interference claim alleging "discouragement," an employee must present evidence that she provided her employer with sufficient notice that her FMLA requested leave qualifies under the Act. *See Sherrod*, 57 F App'x at 73 n.6 ("Some district courts in this Circuit have suggested that an employee may bring an interference claim for actions which could 'chill' desire to take FMLA leave . . . [n]onetheless, appellant does not have a cause of action for interference in this case because she failed to give her employer sufficient notice that her FMLA requested leave qualified under the statute."). Furthermore, a plaintiff is required to show evidence that she suffered prejudice insofar as the employer's actions rendered the employee "unable to exercise that right in a meaningful way, thereby causing injury." *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004).

Henley's claim is premised on Brandywine Hospital interfering with her FMLA rights by criticizing and harassing her for taking bathroom breaks to check her blood sugar and by issuing the February 2017 written warning for tardiness, which acknowledged that some of the listed dates of tardiness included Henley's FMLA time. Henley further alleges Lisa Goble, the Interim Human Resources Manager, told her "don't even think about reporting time to FMLA source" and that she would personally fight the requested time. Henley Dep. 201:8–17. Henley claims these events made her afraid to use her FMLA time for fear of being disciplined or terminated.

The February 2017 written warning cannot, on its own, operate as an interference with her FMLA rights. Although MacMullen testified that some of the days referred to in the letter were in fact later designated as FMLA time, there is no evidence that any date for which Henley requested time and was denied, even indirectly. Similarly, Henley's "discouragement" theory—based mostly on Goble's comment—fails because there is no evidence that Henley actually tried to request FMLA time but was then discouraged from doing so. There is also no evidence that she intended to take time off but was prevented because of Goble's comment. As required in *Sherrod* and *Sarnowski*, there is no evidence she gave notice of her intent to take FMLA time and that the time qualified under the Act. Finally, Henley cannot establish prejudice because there is no evidence that the actions of Brandywine Hospital, Goble, MacMullen, or anyone else "rendered [her] unable to exercise [her FMLA rights] in a meaningful way." *Conoshenti*, 364 F.3d at 143. As a result, Brandywine Hospital is entitled to summary judgment on Henley's FMLA interference claim.

Because the Court will grant summary judgment for Brandywine Hospital on Henley's other PHRA claims, MacMullen is entitled to summary judgment on Henley's claim against her for aiding and abetting. Section 955(e) of the PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act

declared by this section to be an unlawful discriminatory practice[.]" 43 Pa. Con. Stat. § 955(e). Courts have thus held that an individual defendant can be held liable under the PHRA in her personal capacity if the individual is a supervisor and the plaintiff can demonstrate that the supervisor aided or furthered the employer's discriminatory practices. *See, e.g., Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996). "[I]t necessarily follows" that, if an employer has not engaged in a discriminatory practice under the PHRA, then "there is no misconduct to aid and abet." *Vazquez v. Carr & Duff, Inc.*¸ No. 16-1727, 2017 U.S. Dist. LEXIS 160972, at *22 (E.D. Pa. Sep. 28, 2017); *see also Kaniuka v. Good Shepherd Home*, No. 05-02917, 2006 U.S. Dist. LEXIS 57403, at *32 (E.D. Pa. Aug. 15, 2006) (holding "[i]ndividual defendants cannot violate PHRA section 955(e) when there is no corresponding section 955(a) violation by an employer to aid and abet"); *Taylor v. Rodale, Inc.*, No. 04-799, 2004 U.S. Dist. LEXIS 10078, at *10–11 (E.D. Pa. May 27, 2004) (dismissing the § 955(e) claim against the individual defendant because there was no basis for relief against the employer). Because Brandywine Hospital is entitled to summary judgment on the substantive PHRA discrimination claims, MacMullen is also entitled to judgment on this derivative claim. Therefore, the Court will grant MacMullen's motion and enter judgment in her favor.

**CONCLUSION**

Brandywine Hospital is entitled to judgment because Henley has failed to establish successor liability for her claims which arose before Brandywine Hospital began operation of the hospital and employed Henley. Regardless of successor liability, there is insufficient evidence to find an adverse employment action for Henley's discrimination claims, to find severe and pervasive conduct for her hostile work environment claims, and to find interference for her FMLA claims. Because all of Henley's claims fail as asserted against Brandywine Hospital, they also fail

as a derivative claim against MacMullen. Accordingly, the Court will grant Defendants' motion for summary judgment and enter judgment in their favor.

An appropriate order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.